**MOONEY AIRCRAFT, INC., Appellant,**

v.

**UNITED STATES of America, Appellee.**

**No. 26261.**

United States Court of Appeals
Fifth Circuit.

Nov. 10, 1969.

Rehearing Denied Jan. 12, 1970.

---

Hal Rachal, Kerrville, Tex., Travis M. Moursund, San Antonio, Tex., for appellant.

Richard C. Pugh, Acting Asst. Atty. Gen., Mitchell Rogovin, Asst. Atty. Gen., Lee A. Jackson, Elmer J. Kelsey, Frank X. Grossi, Jr., Attys., Dept. of Justice, Washington, D. C., Jones O. Jones, U. S. Dept. of Justice, Tax Div., Forth Worth, Tex., Ted Butler, Asst. U. S. Atty., San Antonio, Tex., for appellee; Ernest Morgan, U. S. Atty., San Antonio, Tex., Jamie C. Boyd, Asst. U. S. Atty., of counsel.

Before THORNBERRY and SIMPSON, Circuit Judges, and CASSIBRY, District Judge.

CASSIBRY, District Judge.

Mooney Aircraft, Inc. (taxpayer) seeks refund of federal income taxes for the fiscal years ending September 30, 1959, October 31, 1962, and October 31, 1963. The district court granted the Government's motion for summary judgment and the taxpayer appeals.

This is yet another case in the continuing conflict between commercial accounting practice and the federal income tax. The facts, as accepted by the parties for the purpose of the motion for summary judgment, may be summarized as follows:

During the years 1961 through 1965 taxpayer was in the business of manufacturing and selling single-engine, executive aircraft. The taxpayer's practice was to sell exclusively to regional distributors throughout the United States and Canada. These distributors sold to more localized dealers who in turn sold to the ultimate consumers.

During the fiscal years ending October 31, 1961, 1963, 1964 and 1965 taxpayer

issued, with each aircraft which it manufactured and sold, a document captioned "Mooney Bond" setting out an unconditional promise that taxpayer would pay to the bearer the sum of $1,000 when the corresponding aircraft should be permanently retired from service.[1] By far the great majority of the "Mooney Bonds" issued by the taxpayer were retained by the distributors to whom they were originally issued, or by persons related to such distributors as the result of reorganizations, liquidations, etc. By October 31, 1965 many distributors had accumulated quite large holdings in the certificates; one distributor, for example, held no fewer than 122.[2]

Taxpayer seeks to exclude or deduct from gross income the face value of either all Mooney Bonds, or those Mooney Bonds which it is estimated will ultimately be redeemed,[3] in the year the instruments were issued. It is the Government's position that the Mooney Bonds may be deducted only in the year the aircraft to which they relate are in fact permanently retired from service. The Government has alleged, and the taxpayer has not denied, that perhaps 20 or more years may elapse between issuance of the Bonds and retirement of the aircraft. The district court sustained the Government's position and, for the reasons to be discussed, we affirm the judgment of the district court.

The issue in this case is whether the taxpayer's "accrual" system of accounting is acceptable for tax purposes. In order to better understand this issue it may be helpful to first discuss the purpose and techniques of accrual accounting as they relate to the federal income tax.

"Income" has been defined as "a net or resultant determined by matching revenues with related expenses."[4] Since the Internal Revenue Code allows the deduction of substantially all business expenses it seems reasonably clear that Congress intended to tax only net business income. This objective, however, is complicated by the fact that the tax is exacted on an annual basis[5] whereas

---

1. All private aircraft in the United States are required to be registered currently with the Federal Aviation Agency, which publishes a monthly report listing every aircraft in service in the country. A copy of this monthly report is regularly obtained by the taxpayer. Comparable registration requirements exist and reports are available in other countries in which aircraft manufactured and sold by the taxpayer operate.

2. The following table sets forth the face value, in thousands of dollars, of all Mooney Bonds redeemed and outstanding at the end of the relevant fiscal years:

| Fiscal Years | Issued | Redeemed | Final Balance Outstanding |
|---|---|---|---|
| 10/31/61 | 217 | – | 217 |
| 10/31/62 | – | 2 | 215 |
| 10/31/63 | 303 | 5 | 513 |
| 10/31/64 | 655 | 10 | 1,158 |
| 10/31/65 | 766 | 16 | 1,908 |

---

3. Taxpayer attempted to introduce an expert study estimating what number of the bonds would actually be presented for redemption.

Taxpayer also raises a separate issue, namely, claimed net operating losses sustained in the fiscal years 1961 and 1963, which result from the deduction from income of the face amount of the bonds. These he wishes to carry-back to fiscal years 1959 and 1962.

4. Comment, 61 Mich.L.Rev. 148, 150 (1962).

5. Int.Rev.Code of 1954, § 441(a). See also Burnet v. Sanford & Brooks Co., 282 U.S. 359, 365, 51 S.Ct. 150, 75 L.Ed. 383 (1931).

business transactions are often spread over two or more years. A business may receive payment for goods or services in one tax year but incur the related expenses in subsequent tax years.[6] The result is that the expenses cannot be used to offset the receipts, and the full amount of the receipts is taxed as though it were all net "profit." [7]

The purpose of "accrual" accounting in the taxation context is to try to alleviate this problem by matching, in the same taxable year, revenues with the expenses incurred in producing those revenues. Accurate matching of expenses against revenues in the same taxable year may occur either by "deferring" receipts until such time as the related expenses are incurred or by "accruing" estimated future expenses so as to offset revenue.[8] Under the deferral concept present receipts are not recognized as "income" until they are "earned" by performing the related services or delivering goods.[9] It is thus not the actual receipt but the *right* to receive which is controlling; and, from an accounting (if not from a tax) point of view, that "right" does not arise until the money is "earned." [10] A corresponding principle states that expenses are to be reported in the year the related income is "earned" whether or not actually paid in that year.[11]

Another accounting technique for matching expenses and revenues is the "accrual" of estimated future expenses which has been described as follows:

"The professional accountant recognizes estimated future expenses when the current performance of a contract to deliver goods or render services creates an *incidental* obligation in the seller which may require him to incur additional expenses at some future time. Instead of deferring the recognition of a portion of the revenue from the sale transaction until such time as the future expenses are incurred, accepted accounting procedures require inclusion of the total revenue in the current determination of income when the contract has been substantially performed, and the simultaneous deduction of all the related expenses, including a reasonable estimate for future expenses." [12]

The early Revenue Acts of 1909 and 1913 did not recognize accounting techniques designed to match receipts and expenses in the same taxable year, but required the reporting of income on the basis of actual receipts and disbursements.[13] It was soon realized that such a requirement could seriously distort income—especially in a business of any complexity in which payment is frequently received in a different accounting period than that in which expenses attributable to such payment are incurred. In order to alleviate the situation the Commissioner of Internal Rev-

6. See, e. g., Pacific Grape Products Co. v. Commissioner of Internal Revenue, 219 F.2d 862 (9th Cir. 1955).

7. The expenses incurred in a subsequent year can, of course, be used to offset receipts for that year; but there may be no receipts for that year, or the receipts may be less than the expenses. In other words, the relationship between expenses incurred in producing the revenues of an earlier year, and the revenues received in the year the expenses are incurred, may well be random and thus produce a distortion of "income" for that year.

8. See Comment, 11 U.C.L.A.L.Rev. 884, 885 (1964).

9. See Comment, 61 Mich.L.Rev. 148, 150, 151 (1962).

10. See, e. g., American Automobile Association v. United States, 367 U.S. 687, 688, 699, 81 S.Ct. 1727, 6 L.Ed.2d 1109 (1961) (Justice Stewart, dissenting opinion).

11. See Comment, 42 Notre Dame Lwyr. 510 (1967).

12. Comment, 61 Mich.L.Rev. 148, 151. (1962).

13. Corporation Excise Tax Act of 1909, c. 6, § 38, 36 Stat. 11, 112; Corporation Income Tax Act of 1913, c. 16, Section II, subdiv. G, 38 Stat. 114, 172. See also United States v. Anderson, 269 U.S. 422, 438, 46 S.Ct. 131, 70 L.Ed. 347 (1926).

enue permitted some departures from the strict receipts and disbursements basis. United States v. Anderson, 269 U.S. 422, 423, 440, 46 S.Ct. 131, 70 L.Ed. 347 (1926). Finally, in the Revenue Act of 1916, Congress provided that a corporation keeping its books upon any basis other than actual receipts and disbursements could report its income on the same basis, "unless such other basis does not clearly reflect its income. * * * " [14] The substance of this provision was carried forward into the Internal Revenue Code of 1939 [15] and the present Internal Revenue Code of 1954. [16] The 1954 Code specifically permitted the reporting of income under the "accrual" [17] method, unless the Commissioner determines that such method "does not clearly reflect income." [18]

These provisions seemed designed to reconcile the tax laws with commercial accounting practice, [19] but unfortunately they have failed to do so. The Commissioner has consistently opposed deferral of prepaid income, or accrual of estimated future expenses, on the ground that for tax purposes such methods do

14. Revenue Act of 1916, c. 463, § 13(d), 39 Stat. 756:
"A corporation * * * keeping accounts upon any basis other than that of actual receipts and disbursements, unless such other basis does not clearly reflect its income, may, subject to regulations by the Commissioner of Internal Revenue, with the approval of the Secretary of the Treasury, make its return *upon the basis upon which its accounts are kept*, in which case the tax shall be computed upon its income as so returned * * *." (Emphasis added)

15. 53 Stat. 24, 26 U.S.C.A. § 41:
"§ 41. General rule
"The net income shall be computed upon the basis of the taxpayer's annual accounting period (fiscal year or calendar year, as the case may be) in accordance with the method of accounting regularly employed in keeping the books of such taxpayer; but if no such method of accounting has been so employed, or if the method employed does not clearly reflect the income, the computation shall be made in accordance with such method as in the opinion of the Commissioner does clearly reflect the income. If the taxpayer's annual accounting period is other than a fiscal year as defined in section 48 or if the taxpayer has no annual accounting period or does not keep books, the net income shall be computed on the basis of the calendar year."

16. 26 U.S.C.A. § 446:
"§ 446. General rule for methods of accounting
"(a) *General rule.*—Taxable income shall be computed under the method of accounting on the basis of which the taxpayer regularly computes his income in keeping his books.
"(b) *Exceptions.*—If no method of accounting has been regularly used by the taxpayer, or if the method used does not clearly reflect income, the computation of taxable income shall be made under such method as, in the opinion of the Secretary or his delegate, does clearly reflect income.
"(c) *Permissible methods.*—Subject to the provisions of subsections (a) and (b), a taxpayer may compute taxable income under any of the following methods of accounting—
"(1) the cash receipts and disbursements method;
"(2) an accrual method;
"(3) any other method permitted by this chapter; or
"(4) any combination of the foregoing methods permitted under regulations prescribed by the Secretary or his delegate."

17. § 446(c) (2), note 16, *supra.*

18. § 446(b), note 16, *supra.*

19. "A consideration of the difficulties involved in the preparation of an income account on a strict basis of receipts and disbursements for a business of any complexity, which had been experienced in the application of the Acts of 1909 and 1913 and which made it necessary to authorize by departmental regulation, a method of preparing returns not in terms provided for by those statutes, indicates with no uncertainty the purpose of sections 12(a) and 13(d) of the Act of 1916. It was to enable taxpayers to keep their books and make their returns according to scientific accounting principles, by charging against income earned during the taxable period, the expenses incurred in and properly attributable to the process of earning income during that period * * *." (Justice Stone in United States v. Anderson, 269 U.S. 422, 440, 46 S.Ct. 131, 134, 70 L.Ed. 347 (1926)).

not clearly reflect income.[20] In the "deferral" cases he has argued that when the taxpayer receives payment under "claim of right,"—i. e., without restriction as to disposition—deferring such payments to a future year violates the annual accounting concept, and they must therefore be reported in the year received.[21] Similarly, in the "accrual" cases, the Commissioner has maintained that it is equally violative of the annual accounting concept to allow present deduction of a future expense unless "all the events"[22] fixing the fact and the amount of the liability occur in the taxable year.[23] Both of these positions are legal crystalizations of the Commissioner's discretionary power under § 461(b) of the Code to reject an accounting method when it does not clearly reflect income. The principal question in the present case is whether, in the light of the statutory policies these doctrines are intended to implement, the Commissioner was justified in disallowing a present deduction of the Mooney Bonds as "not clearly reflecting income."[24]

Although the Government admits that the retirement of the aircraft in this case is inevitable, it contends, nevertheless, that taxpayer cannot deduct the bonds in the year of issuance because the obligation they represent is contingent upon the happening of a future event—retirement of the related aircraft. Therefore, "all the events" creating the liability have not occurred in the taxable year. We cannot agree. In all the cases cited by the Government there was uncertainty as to whether the future event would actually happen;[25] here

---

20. G.C.M. 20021, 1938–1 Cum.Bull. 157.

21. See, e. g., New Capitol Hotel, Inc. v. Commissioner of Internal Revenue, 261 F. 2d 437 (6th Cir. 1958), affirming per curiam 28 T.C. 706 (1957); Hirsch Improvement Co. v. Commissioner of Internal Revenue, 143 F.2d 912 (2d Cir. 1944), cert. denied, 323 U.S. 750, 65 S.Ct. 84, 89 L.Ed. 601 (1944); Clay Sewer Pipe Assn. v. Commissioner of Internal Revenue, 139 F.2d 130 (3d Cir. 1943), affirming 1 T.C. 529 (1943); South Dade Farms, Inc. v. Commissioner of Internal Revenue, 138 F.2d 818 (5th Cir. 1943); Automobile Club of N. Y., Inc., 32 T.C. 906 (1959); National Airlines, Inc., 9 T.C. 159 (1947).

22. The "all events test," as it has come to be known, was originally formulated in United States v. Anderson, 269 U.S. 422, 441, 46 S.Ct. 131, 70 L.Ed. 347 (1926). The all events test has been expressly adopted by Treas.Reg. § 1.461–1(a) (2) (1964).

23. See e. g., Brown v. Helvering, 291 U.S. 193, 54 S.Ct. 356, 78 L.Ed. 725 (1943); North American Oil Consol. v. Burnet, 286 U.S. 417, 52 S.Ct. 613, 76 L.Ed. 1197 (1932). See also cases cited note 21, supra.

24. Internal Revenue Code of 1954, 26 U.S.C.A. § 441(b). In Dixie Pine Products Co. v. Commissioner of Internal Revenue, 320 U.S. 516, 519, 64 S.Ct. 364, 365, 88 L.Ed. 270 (1944), the Court said:
"It has long been held that in order truly to reflect the income of a given year, all the events must occur in that year which fix the amount and the fact of the taxpayer's liability for items of indebtedness deducted though not paid * * *."

25. In Brown v. Helvering, 291 U.S. 193, 54 S.Ct. 356, 78 L.Ed. 725 (1934) taxpayer attempted to deduct from commissions for the sale of insurance the estimated amounts that would have to be refunded because of future cancellations. The Supreme Court disallowed the deduction because there was no assurance that any single policy would be cancelled and the expense incurred:
"In respect to no particular policy written within the year could it be known that it would be cancelled in a future year. * * *" Id. at 201, 54 S.Ct. at 360
In Simplified Tax Records, Inc. v. Commissioner of Internal Revenue, 41 T.C. 75 (1963) the taxpayer contracted to prepare income tax reports for its subscribers, receiving payment in advance. Since, however, this service was available only upon a subscriber's demand there was no assurance that taxpayer would render services to any individual subscriber in the future, and a deduction for the estimated expense of such future services was disallowed. Cf. Schlude v. Commissioner of Internal Revenue, 372 U.S. 128, 83 S.Ct. 601, 9 L. Ed.2d 633 (1963); American Automobile Assn. v. United States, 367 U.S. 687, 81 S.Ct. 1727, 6 L.Ed.2d 1109 (1961). In these cases, then, although there is a great probability that the expense will occur, it

there is none. There is no contingency in this case as to the *fact* of liability itself; the only contingency relates to *when* the liability will arise.[26] To be sure, technically, the liability is "created" by the event of the retirement of a particular plane; if a plane lasted forever there would be no liability. But taxation has been called a "practical field," and we do not see how the technical position the Government takes is designed to further the purpose of the statute. One commentator has argued, and we think justly, that the all events test is designed to protect tax revenues by "[insuring] that the taxpayer will not take deductions for expenditures that might never occur. * * *"[27] If there is any doubt whether the liability will occur courts have been loath to interfere with the Commissioner's discretion is disallowing a deduction. See note 25, *supra* But here there is no doubt at all that the liability will occur since airplanes, like human beings, regrettably must cease to function.[28]

The "all events test," however, is not the only basis upon which the Commissioner can disallow a deduction. Under § 446(b) he has discretion to disallow any accounting method which does not clearly reflect income. As previously stated, the Commissioner has often relied on the "claim of right test," see cases cited, note 21, *supra*, to disallow a deduction or a deferral of income in cases where the taxpayer's receipt of the funds was unrestricted. He appears to be doing so here, for the Government says in its brief, "Taxpayer received the full economic benefit of these proceeds, without any restriction as to use or enjoyment, and without any duty to return or transfer any part of these proceeds." The claim of right doctrine, however, has not enjoyed universal acceptance in the courts, see e. g., Schuessler v. Commissioner of Internal Revenue, 230 F.2d 722 (5th Cir. 1956); Beacon Publishing Co. v. Commissioner of Internal Revenue, 218 F.2d 697 (10th Cir. 1955), and in two recent major decisions in this area, American Automobile Assn. v. United States, 367 U.S. 687, 81 S.Ct. 1727, 6 L.Ed.2d 1109 (1961) (hereafter AAA) and Schlude v. Commissioner of Internal Revenue, 372 U.S. 128, 83 S.Ct. 601, 9 L.Ed.2d 633 (1963) (hereafter *Schlude*), the Supreme Court seems to have placed little if any reliance on the doctrine.[29]

is not certain; and in cases of doubt the courts have usually deferred to the Commissioner:

"Experience taught that there is a strong probability that many of the policies written during the taxable year will be * * * cancelled. But experience taught also that we are not dealing here with certainties." Brown v. Helvering, 291 U.S. 193, 201, 54 S. Ct. 356, 360, 78 L.Ed. 725. (Brandeis, J.)

26. See, e. g., Revenue Ruling 57–105, 1957–1 Cum.Bull. 193:

"* * * an obligation is considered contingent when the existence of any liability at all is uncertain or when its existence depends upon the happening of a future *contingent* event. (Emphasis added)

Although, strictly speaking, liability in the present case depends upon a future event, it does not depend upon a future contingent event, since retirement of the planes is certain.

27. Comment. Notre Dame Lwyr. 511, 520 (1967).

28. Even if the fact of the liability seems certain or highly probable some decisions have disallowed a deduction if the *amount* is uncertain or at least cannot be reasonably estimated. See, e. g., Brown v. Helvering, 291 U.S. 193, 54 S.Ct. 356, 78 L.Ed. 725 (1934). Since there is no finding by the trial judge on this issue, and since, as appears below, its resolution is not necessary for the decision of this case, we do not reach it.

29. Justice Stewart underlines this in his dissenting opinions. See Schlude v. Commissioner of Internal Revenue, 372 U.S. 128, 129, 138–139, 83 S.Ct. 601, 9 L.Ed. 2d 633 (1963); American Automobile Assn. v. Untied States, 367 U.S. 687, 700–702, 81 S.Ct. 1727, 6 L.Ed.2d 1109 (1961).

Both *AAA* and *Schlude* involved an attempt to defer prepaid receipts to the future years when they allegedly would be "earned." In *AAA* the association received membership dues a year in advance, and membership could be commenced in any month of the year. In return for the dues the association provided its members with certain services, such as road maps, highway repair service, etc., but the services were performed only on the demand of an individual member. Rather than reporting all of the dues for the tax year in which received, the association "prorated" them over a twelve month membership period, overlapping two tax years, according to estimates of future costs based on its past experience. The Supreme Court held that even though the taxpayer's accrual system was in accord with generally accepted commercial accounting principles, the Commissioner could reject it as "not clearly reflecting income" for tax purposes. Since the services involved were not performed on fixed dates after the tax year, but only on demand by an individual member, the dues of each member were being deferred to "a taxable period in which no, some, or all the services paid for by those dues may or may not be rendered." *AAA, supra,* 367 U.S. at 692, 81 S.Ct. at 1730. Even the detailed proof showing a correspondence between the deferral and the overall cost structure was rejected:

> "The Code exacts its revenue from the individual member's dues which, no one disputes, constitute income. When their receipt as earned income is recognized ratably over two calendar years, without regard to correspondingly fixed individual expense or performance justification, but consistently with overall experience, their accounting doubtless presents a rather

accurate image of the total financial structure, but fails to respect the criteria of annual tax accounting and may be rejected by the Commissioner." *Id.*

Similarly, in *Schlude, supra,* the Supreme Court rejected deferral of prepaid income for dancing lessons. The dates for the dancing lessons were not fixed in advance but were to be arranged between student and instructor. Hence, since the student might not "demand" lessons, there was no assurance that any lessons would be given, and thus the corresponding "costs" incurred, on dates after the tax year. The Commissioner could thus disallow the deferral as not accurately reflecting income.

Insofar as *AAA* and *Schlude* concerned inaccurate matching of revenues and expenses, both seem distinguishable from the present case. For one thing, this case involves an attempt to deduct future expenses rather than to defer present receipts. *Cf.* Schuessler v. Commissioner of Internal Revenue, 230 F.2d 722 (5th Cir. 1966) *with* Beacon Publishing Co. v. Commissioner of Internal Revenue, 218 F.2d 697 (10th Cir. 1955); see also Hagen Advertising Displays, Inc. v. Commissioner of Internal Revenue, 407 F.2d 1105, 1110 (6th Cir. 1969). Although the net effect of deferral of income and deduction of future expenses is often identical, deferral creates a greater risk of loss of tax revenues since at least in the accrual of expenses situation income is reported and taxed when received. See, e. g., Comment, 42 Notre Dame Lwyr. 511, 520 (1967). But even if "deferral" and "accrual" are identical for tax purposes, there is no doubt in this case that taxpayer will incur the "costs" necessary to pay the bonds on dates after the tax year.[30] The Government argues that

---

30. *Cf.* Simplified Tax Records, Inc. v. Commissioner of Internal Revenue, 41 T.C. 75 (1963), note 25, *supra*. In this case the Tax Court relied on *Schlude* and *AAA* to reject an *accrual of future expenses*. Taxpayer had contracted to provide tax returns for subscribers for a period of two years and had been paid in advance. There was no obligation to make the returns, however, unless a subscriber made a specific request. *Held*, since the service was available only on demand of the members, there was, as in *Schlude* and *AAA*, no assurance that the services would be performed and thus deduction of the future expenses involved could be

*Schlude* and *AAA* require that these costs must arise on fixed dates. But we think that the relevance of the "fixed dates" criteria in *Schlude* and *AAA* was that since there were no fixed dates on which services had to be performed, there was no assurance that services *would be performed* after the tax year. If it is certain that there will be services (or costs) after the tax year, why should it make any difference that the date of those services (or costs) is uncertain? All that *Schlude* and *AAA* would seem to require is that the deferred income is reported as the related costs do in fact occur. If this were a deferral case, the taxpayer would report the "income" represented by the bonds in the years they were redeemed and paid.

*Schlude* and *AAA*, however, have significance far beyond their particular facts. For in both these cases the Court announced an additional reason for its decision which indicated that even if the taxpayer's system did truly reflect income it still might be rejected. Sections 452 [31] and 462 [32] of the Internal Revenue Code of 1954 contained the first explicit legislative sanction of deferral of income and deduction of future estimated expenses. In 1955 these provisions were retroactively repealed.[33] The Court construed the enactment and repeal of these sections as indicating Congressional dis-

approval of the practices they had authorized:

"[T]he fact is that § 452 for the first time specifically declared petitioner's system of accounting to be acceptable for income tax purposes, and overruled the long-standing position of the Commissioner and courts to the contrary. And the repeal of the section the following year, upon insistence by the Treasury that the proposed endorsement of such tax accounting would have a disastrous impact on the Government's revenue, was just as clearly a mandate from Congress that petitioner's system was not acceptable for tax purposes." [34]

This alternative ground, based on legislative intent, would seem to dispose of the entire question: *all* deferrals and accruals are bad unless specifically authorized by Congress. But the Court was careful to discuss the legislative history as dictum and restricted its holding to a finding that the Commissioner did not abuse his discretion in rejecting the *AAA*'s accounting system. It specifically refrained from overruling *Beacon* [35] and *Schuessler*,[36] distinguishing them on the ground that future performance was certain. *AAA, supra*, 367 U.S. at 692, n. 4, 81 S.Ct. 1727. It seems, then, that the Court is for the present taking a middle ground pending Congressional reform

---

disallowed. This is not dissimilar from the holding in Brown v. Helvering, note 25, *supra*. In a sense, then, *Schlude* and *AAA* only represent the application of the "all events" test to *deferral* cases. In the present case we think the all events test has been met since it is certain that the bonds will be redeemed in future years. See text at notes 25–26, *supra*.

31. Int.Rev.Code of 1954, ch. 736, § 452, 68A Stat. 152.

32. Int.Rev.Code of 1954, ch. 736, § 462, 68A Stat. 168.

33. Ch. 143, 69 Stat. 134 (1955).

34. *AAA*, 367 U.S. 687, 695, 81 S.Ct. 1727, 1731, 6 L.Ed.2d 1109 (1961). In his dissent in *Schlude*, 372 U.S. 128, 139–140, 83 S.Ct. 601, 607, 9 L.Ed.2d 633 (1963), Mr. Justice Stewart said that

"to rely on the repeal of §§ 452 and 462 as indicating congressional disapproval

of accrual accounting principles is conspicuously to disregard clear evidence of legislative intent. The Secretary of the Treasury, who proposed the repeal of these sections, made explicitly clear that no inference of disapproval of accrual accounting principles was to be drawn from the repeal of the sections. So did the Senate Report. The repeal of these sections was occasioned solely by the fear of temporary revenue losses which would result from the taking of "double deductions" during the year of transition by taxpayers who had not previously maintained their books on an accrual basis."

35. 218 F.2d 697 (10th Cir. 1955) (deferral by newspaper of prepaid subscriptions)

36. 230 F.2d 722 (5th Cir. 1956) (accrual of expenses of 5-year service period).

and clarification in this extremely confused area of the law: While the repeal of §§ 452 and 462 does not absolutely preclude deferrals and accruals, it indicates that the Commissioner should have very broad discretion to disallow such accounting techniques when there is any reasonable basis for his action. This is the construction given these two Supreme Court cases by the United States Tax Court:

"We suspect, because of its repeated emphasis on the Commissioner's discretion under Sec. 41 of the 1939 Code and Sec. 446 of the 1954 Code, and the legislative history of Secs. 452 and 462, that the majority of the Supreme Court stand for the principle that, absent statutory sanction for it, unless the taxpayer can show that the Commissioner clearly abused his discretion in disallowing deferral of prepaid income or accrual of estimated future expenses, this exercise of the Commissioner's discretion will not be disturbed by the Court even though the taxpayer's method of accounting is in accord with generally accepted principles of commercial accounting. We also suspect that this principle, if such it be, will meet with some resistance in the courts. See the dissenting opinions of Mr. Justice Stewart in American Automobile Assn. v. United States, 367 U.S. 687, 698, 81 S.Ct. 1727, 6 L.Ed.2d 1109 (1961) and Schlude v. Commissioner of Internal Revenue, 372 U.S. 128, 137, 83 S.Ct. 601, 9 L.Ed.2d 633 (1963), and the opinions of various Courts of Appeals in Bressner Radio, Inc. v. Commissioner of Internal Revenue, 267 F.2d 520 (C.A.2, 1959), reversing and re-

manding 28 T.C. 378 (1957), Beacon Publishing Co. v. Commissioner of Internal Revenue, 218 F.2d 697 (C.A.10, 1955), reversing 21 T.C. 610 (1954), Schuessler v. Commissioner of Internal Revenue, 230 F.2d 722 (C.A.5, 1956), reversing 24 T.C. 247 (1955), and Pacific Grape Prod. Co. v. Commissioner of Internal Revenue, 219 F. 2d 862 (C.A.9, 1955), reversing 17 T.C. 1097 (1952). The application of such a principle to the facts here would certainly require a decision for respondent on this issue. Simplified Tax Records, Inc. v. Commissioner, 41 T.C. 75, 81, n. 4 (1963).

The question remains: Was there reasonable basis for the Commissioner's action in this case? [37] It appears to us there was ample basis.

█ The most salient feature in this case is the fact that many or possibly most of the expenses which taxpayer wishes to presently deduct will not actually be paid for 15, 20 or even 30 years (the taxpayer has not attempted to deny this). In no other case coming to our attention have we found anything even comparable to the time span involved in this case. In virtually all these other cases, even though a taxpayer may have received money under "claim or right" and had unrestricted use of the funds, there was still some relationship between those funds and related expenses which, more or less proximately, had to be borne. If there were no actual strings there were at least invisible strings attached to the money. Taxpayers could not use the money without at least an eye to the upcoming expenses or services to be performed. In this case,

---

37. The Commissioner does not have to specifically state his statutory ground in exercising his discretion under § 446(b): "Although the notice of deficiency sent to petitioner does not state on what statutory ground the Commissioner relied in making this determination, it seems, of necessity, that the Commissioner relied on Section 41 [the precursor of 446(b)]. In informing petitioner that the method it used to account for the dues payments was improper, the Commissioner was tacitly asserting that this method did not clearly reflect income, and by substituting his own determination of the amounts to be included in income, the Commissioner was asserting that the method he employed did clearly reflect petitioner's income." Automobile Club of New York, Inc. v. Commissioner of Internal Revenue, 304 F.2d 781, 783 (2d Cir. 1962).

however, the related expenditure is so distant from the time the money is received as to completely attenuate any relationship between the two. For all practical purposes the revenue taxpayer received from the sale of the planes is his to use as he pleases. Rather than being set up as a reserve to pay an impending expense it is far more probable that the money will be used as capital to expand the business. In what sense, then, is it an accurate reflection of income to regard it as an expense of doing business in the current year? To so regard it is to let an accounting fiction obscure the business and fiscal realities that are the heart of this case. In exercising his discretion the Commissioner need not close his eyes to these realities. We feel that from both a business and tax standpoint the accounting systems rejected by the Supreme Court in *Schlude* and *AAA* were much more reasonable than the one involved here, and that to allow a present deduction in this case would distort rather than reflect income. We therefore find no difficulty in concluding that the Commissioner had a reasonable basis for disallowing the deduction as not clearly reflecting income.

There is yet another reason why the time span is too long. The longer the time the less probable it becomes that the liability, though incurred, will ever in fact be *paid*. Some courts have held that the improbability of payment is not a ground for disallowing the accrual of a future expense.[38] Yet under 452 of the Internal Revenue Code of 1954, note 31 *supra*, the first express legislative sanction of deferral of income (repealed in 1955, see text at notes 31–33, *supra*), Congress specifically limited the length

of time income could be deferred to five years. Where the liability for prepaid income extends beyond five years from the time of receipt,[39] or where the liability is to extend for an indeterminate period—e. g., in the case of coupon books or service tickets[40]—any income attributable to liability extending beyond the five year period is required to be prorated over the year of receipt and the ensuing five year period. It seems to us that these time limits are founded on the need to protect tax revenues, since the longer the interval between receipt of the funds and imposition of the tax the greater the risk the funds will be dissipated or that the taxpayer will die or that a business will be dissolved.[41] A similar risk of loss of revenues exists in the case of accruals. Indeed, the very purpose of the "all events test" is to make sure that the taxpayer will not deduct expenses that might never occur.[42] Just as in the deferral situation, the longer the time interval between receipt of money and payment of the related expense the greater the chance that the money will be dissipated and never paid. If it is never paid, it is not an expense and should have been taxed. In the present case the taxpayer could in good faith use the monies it has received as capital to expand its business; if one day it became insolvent the expense might never be paid, yet the money would have been used as tax-free income. We repeat that because of the inordinate length of time involved in this case the Commissioner was clearly within his discretion in disallowing deduction of the "Mooney Bonds" as a *current* expense.

 The taxpayer's further contentions have little merit. First, taxpayer

**38.** Zimmerman Steel Co. v. Commissioner of Internal Revenue, 130 F.2d 1011, 143 A.L.R. 1054 (8th Cir. 1942), originated this rather dubious rule of tax accounting (all the more dubious now in light of *Schlude* and *AAA*). This Court followed Zimmerman in Fahs v. Martin, 224 F.2d 387 (5th Cir. 1955).

**39.** § 452(b) ("long period").

**40.** § 452(a) (2) ("indeterminate period"). See Bierman and Helstein, Accounting for Prepaid Income and Estimated Future Expenses Under the Internal Revenue Code of 1954, 10 Tax.L.Rev. 83, 93–96 (1955)

**41.** See Comment, 42 Notre Dame Lwyr. 511, 520 (1967).

**42.** *Id.*

argues that the Mooney Bonds should be equated with "patronage dividends" distributed to members of a cooperative and thus, under the applicable decisional law, excluded from gross income. The reason for excluding a patronage dividend comports with the general theory of gross income, as evidenced by the following succinct definition of a patronage dividend by this Court in United States v. Mississippi Chemical Co., 326 F.2d 569, 570-571 (5th Cir. 1964):

> When a legally enforceable obligation exists to refund to qualified purchasers (stockholder patrons) their proportionate share of gross receipts above costs and expenses based upon their respective purchases, such receipts are income of the patrons and not income of the cooperative and consequently are to be excluded in the computation of the cooperative's gross income. [Citations omitted]

The Mooney Bonds are patently ineligible for treatment as patronage dividends under the above criteria. The bonds do not represent an obligation of the taxpayer to refund a portion of its gross receipts to its purchasers on a proportionate scale. As previously emphasized, taxpayer retained the total receipts of the sale of an airplane without any restrictions as to use. It was not required to fulfill the obligation on the bonds, when it accrued,. from proceeds derived from the sale. In no sense can it be said that these proceeds belonged to the purchasers of the planes rather than Mooney, or that the money was in the hands of Mooney merely as agent or trustee for its patrons. See United States v. Mississippi Chemical Co., *supra*, at 571. Moreover, the bonds were issued in equal denominations without regard to the cost of the particular craft to which each related. Smith & Wiggins Gin, Inc. v. Commissioner of Internal Revenue, 341 F.2d 341, 350 (5th Cir. 1965). The definition of a patronage dividend has been developed in a legion of cases, many cited by the taxpayer, but it would only be quixotic to engage in protracted analysis of the area. The Mooney Bonds do not even approach the basic criteria underlying the patronage dividend exclusion.

Likewise, the taxpayer's contention that the Mooney Bonds qualify as excludable premium coupons within the applicable regulations also lacks merit. See Treas.Reg. § 1:451-4(a). Unlike a trading stamp or a premium coupon, which is immediately redeemable upon issuance, the Mooney Bond cannot be redeemed until some distant date in the future when the related plane is retired. To treat the instruments as premium coupons would violate the intent of the regulations, which envision premium coupons which are in fact redeemed shortly after the related sales. See generally Automobile Club of New York, Inc. v. Commissioner of Internal Revenue, 304 F.2d 781 (2d Cir. 1962); Brown & Williamson Tobacco Corp. v. Commissioner, 16 T.C. 432 (1951), appeal dismissed, 194 F.2d 537 (6th Cir. 1952). This is, we think, conclusively proved by the fact that the regulations allow a present deduction for only that portion of the stamps issued in a given year which will eventually be redeemed, and that this percentage is to be determined on the basis of the taxpayer's redemption experience during the preceding *five years*. Treas.Reg. § 1:451-4 (a). This shows that the regulations contemplate that all the stamps of a given year will be redeemed within the following five year period (except of course, those that will never be redeemed). Mooney, on the other hand, would have to show redemption experience over a twenty year period (at least).

We affirm the judgment of the District Court.

Affirmed.