RAYMOND W. HODGE, ET AL., [1] Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent. Hodge v. Commissioner
DOCKET Nos. 509-71, 510-71, 511-71, 512-71, 513-71.
United States Tax Court
T.C. Memo 1973-64; 1973 Tax Ct. Memo LEXIS 220; 32 T.C.M. (CCH) 277; T.C.M. (RIA) 73064; March 22, 1973, Filed Hal F. Rachal, pro se. in Docket No. 513-71 Hal F. Rachal, Jr., for the petitioners. W. John Howard, for the respondent. SCOTT MEMORANDUM FINDINGS OF FACT AND OPINION
SCOTT, Judge: Respondent determined deficiencies in the Federal income taxes of petitioners Raymond W. and Josephine 2 B. Hodge in the amounts of $3,890.08 and $2,021.06 for the calendar years 1965 and 1966, respectively, and a deficiency in the Federal income tax of petitioner Raymond W. Hodge in the amount of $5,112.81 for the calendar year 1967. Respondent determined deficiencies in the *221 Federal income taxes of petitioners Calvin W. and Caroline W. White for the calendar years and in the amounts as follows: 1965
$3,702.02
1966
2,937.34
1967
3,785.69
Respondent determined deficiencies in the Federal income taxes of petitioners Norman F. and Alyene E. Hoffman for the calendar years and in the amounts as follows: 1965
$3,769.59
1966
2,558.15
1967
2,606.92
Respondent determined deficiences in the Federal income taxes of petitioners Hal F. and Virginia M. Rachal for the calendar years and in the amounts as follows: 1965
$5,464.70
1966
5,105.72
1967
2,383.13
The cases of the above designated petitioners were consolidated for trial and opinion upon the joint motion of the parties. 3 The issues for decision are: (1) Whether a small business corporation of which petitioners are stockholders properly accrued in the year of issuance to purchasers of aircraft the full amount of documents entitled, "Mooney Bond" and "Mooney Premium Coupon," each of which documents contained a promise to pay to the bearer or registered holder the face amount thereof when the aircraft with respect to which it was issued *222 was permanently removed from service. (2) Whether a payment made to each petitioner in 1966 by the manufacturer of aircraft sold by a small business corporation of which petitioners were stockholders, based on the number of aircraft which had been sold by the corporation, was a nontaxable gift or taxable income to petitioners. FINDINGS OF FACT
Some of the facts have been stipulated and are found accordingly. Petitioners Raymond W. Hodge and Josephine B. Hodge filed joint income tax returns for the taxable years 1965 and 1966 with the district director of internal revenue, Dallas, Texas. Petitioner Raymond W. Hodge (hereinafter called Hodge) filed an individual income tax return as a single person for the taxable year 1967 with the district director of internal revenue, Dallas, Texas. 4 At the time of the filing of the petition herein, Hodge resided in Midland, Texas and Josephine B. Hodge resided in Cannon City, Colorado. Petitioners Calvin W. White and Caroline W. White filed joint income tax returns for the taxable years 1965, 1966, and 1967 with the district director of internal revenue, Dallas, Texas. At the time of the filing of the petition herein, Calvin W. *223 White (hereinafter referred to as White), and Caroline W. White resided in Midland, Texas. Petitioners Norman F. Hoffman and Alyene E. Hoffman filed joint income tax returns for the taxable years 1965, 1966, and 1967 with the district director of internal revenue, Dallas, Texas. At the time of the filing of their petition herein, Norman F. Hoffman (hereinafter called Hoffman) and Alyene E. Hoffman resided in Alexandria, Virginia. Petitioners Hal F. Rachal and Virginia M. Rachal filed joint income tax returns for the taxable years 1965, 1966, and 1967 with the district director of internal revenue, Dallas, Texas. At the time of the filing of their petition herein, Hal F. Rachal (hereinafter referred to as Rachal), and Virginia M. Rachal resided in Midland, Texas. 5 (1) Bond Warranty Expense Issue
During the years in issue petitioners Hodge, White, Hoffman, and Rachal owned all of the outstanding capital stock of West Texas Flying Service, Inc., which changed its name on April 13, 1966, to Mooney Southwest, Inc. (hereinafter called Mooney Southwest). Mooney Southwest had properly elected for the years here in issue to be subject to the provisions of subchapter "S", I. *224 R.C. 1954. [2]Mooney Southwest was in the business of selling executive aircraft primarily as a distributor of Mooney Aircraft, Inc. (hereinafter called Mooney Aircraft). Mooney Southwest, upon its incorporation in 1959, kept its books, as had its predecessor partnership since 1947, on a cash basis of accounting. In auditing Mooney Southwest's returns for 1962 and 1963, respondent's agent proposed to change Mooney Southwest's method of accounting from the cash to an accrual basis. Mooney Southwest accepted this adjustment and placed its books for 1962 and 1963 on an accrual basis, and thereafter, including the years here in issue, kept its books and filed its subchapter "S" returns on an accrual basis. During the years in issue Rachal was president and chairman of the board of Mooney Aircraft and Hoffman was a substantial shareholder in Mooney Aircraft and served as its vice president of sales. 6 During the years in issue the four shareholders of Mooney Southwest served that corporation in the following capacities: Hal F. Rachal Chairman of the Board Norman F. Hoffman President Calvin W. White Vice President
*225 Raymond W. Hodge Secretary Each shareholder of Mooney Southwest held 4,950 shares of capital stock. Mooney Southwest issued a document captioned, "Mooney Bond" with each aircraft sold. Each "Mooney Bond" promised to pay the bearer a specified sum, usually $3,000 when the aircraft with respect to which it was issued was permanently retired from service. [3] It was Mooney Southwest's consistent practice to issue a "Mooney Bond" at the time of each sale and the "Mooney Bond" was referred to on the face of the sales invoice. Mooney Southwest with each aircraft it purchased from Mooney Aircraft received a "Mooney Bond" of that company in the face amount of $1,000, which Mooney Aircraft issued on each aircraft sold to a distributor. The "Mooney Bonds" issued by Mooney Aircraft contained the unconditional promise of that company to pay the bearer the face amount when the corresponding aircraft was permanently retired from service. "Mooney Bonds" issued by Mooney Aircraft which were 7 received by Mooney Southwest were passed on by Mooney Southwest to the purchasers of the corresponding aircraft, which resulted in the purchases from Mooney Southwest of aircraft manufactured by *226 Mooney Aircraft receiving two "Mooney Bonds" with a total face amount of $4,000. The question of whether the face amount of the documents captioned, "Mooney Bond" issued by Mooney Aircraft with the sale of aircraft to distributors was properly accrued as an expense in the year the bonds were issued was the subject of a refund suit by Mooney Aircraft in the United States District Court for the Western District of Texas. An unpublished summary judgment for the United States in that case was affirmed by the United States Court of Appeals for the Fifth Circuit in Mooney Aircraft, Inc. v. United States, officially reported at 420 F. 2d 400 (1969). Soon after October 31, 1965, all outstanding "Mooney Bonds" of Mooney Southwest were replaced with "Mooney Premium Coupons" in registered form. *227 The oustanding "Mooney Bonds" were traced to the holders who were persuaded to send them to Mooney Aircraft together with a form, "Application for Registration of Mooney Premium Coupon," which set forth the relevant data as to the holder and as to the history of each respective "Mooney Bond" which was replaced by a "Mooney Premium Coupon." 8 The changeover from "Mooney Bonds" to "Mooney Premium Coupons" was made in order that Mooney Southwest might have some more complete information as to the identity and location of the holders of the documents and to provide such holders with greater security in the form of registered coupons rather than bearer bonds. Mooney Southwest first began issuing "Mooney Bonds" in 1960. At the time of the trial the only aircraft sold by Mooney Southwest which had been permanently retired from service were aircraft which had been accidentally destroyed either in a crash or by some ground disaster such as a hurricane. There are no statistics on the average length of time aircraft of the type sold by Mooney Southwest remain in service. Some similar aircraft have remained in service for 30 years and longer. On its return for 1965, Mooney Southwest *228 claimed an accrual deduction in the amount of $93,000 as a bond warranty expense. This claimed deduction was calculated on the basis of "Mooney Bonds" and/or "Mooney Premium Coupons" issued on the 31 aircraft sold during the year 1965 at the rate of $3,000 per aircraft. During 1965 Mooney Southwest paid off three of the bonds or coupons for a total amount of $9,000. On its return for 1966, Mooney Southwest claimed an accrual deduction in the amount of $132,000 as a bond warranty expense. This claimed deduction was calculated on the basis of bonds and/or coupons issued on 35 aircraft sold during the year 1966 at the 9 rate of $3,000 per aircraft on 34 aircraft and $30,000 on one aircraft. [4] During 1966 Mooney Southwest paid off two of the bonds or coupons in the total amount of $6,000. On its return for 1967 Mooney Southwest claimed an accrual deduction in the amount of $90,000 as a bond warranty expense. This claimed deduction was calculated on the basis of bonds or coupons issued on 29 aircraft sold during 1967 at the rate of $3,000 per aircraft on 28 aircraft *229 and $6,000 on one aircraft. During the year 1967 Mooney Southwest paid off one of the bonds of coupons in the amount of $3,000. Respondent in his notice of deficiency increased each petitioner's income as reported by increases in the income of Mooney Southwest as reported on its subchapter "S" returns with the following explanation: It is determined that the amount of $93,000.00 claimed as a deduction for accrued Bond Warranty expense in 1965; the amount of $132,000.00 claimed as a deduction for Accrued Premium Coupon expense in 1966; and the amount of $90,000.00 claimed as a deduction for Accrued Premium Coupon expense in 1967 are not allowable because it has not been established that your accounting method for accruing estimated future expenses clearly reflects income. It is further determined that you paid $9,000.00 in 1965 for Bond Warranty expense; $6,000.00 in 1966 for Premium Coupon expense; and $3,000.00 in 1967 for Premium Coupon expenses. Accordingly, taxable income is increased $84,000.00 in 1965; $126,000.00 in 1966; and $87,000.00 in 1967. 10 (2) Bonus Payments Issue
In the fall of 1966, by decision of its board of directors, Mooney Aircraft paid a bonus *230 by checks to each of its distributors based on the number of aircraft purchased by each distributor during the model year 1966, as follows: If a distributor purchased 5 or less, he received no bonus; if a distributor purchased 8 or more, he received a bonus equal to 1 percent of the net billing on aircraft Nos. 6, 7 and 8; if a distributor purchased 9 aircraft, he received a total of 1 percent on the net billing on each of the 9; if a distributor purchased as many as 10 but no more than 17, he received a total of 1 percent on each of the first 9 and a total of 2 percent of the net billing of Nos. 10 through 17; and if a distributor purchased 18 or more, he received a total of 2 percent of the net billing on all aircraft purchased. The action of the board of director in authorizing the payment was taken in September of 1966 following the close of the model year and was announced to the distributors at the annual sales meeting when the 1967 models were introduced. In 1966, Mooney Aircraft disbursed the total sum of $184,417.80 to its distributors as bonuses. Mooney Aircraft did not claim these bonus expenditures as a deductible expense in 1966. There were no bonuses distributed *231 by Mooney Aircraft to its distributors in any year other than 1966. However, commencing with model year 1967 a modified discount procedure was adopted whereby distributors would be credited with discounts on a progressive scale which escalated with the number of aircraft purchased. 11 Mooney Aircraft made a direct payment by checks in the amount of $2,785.03 to each of the petitioners who were shareholders of Mooney Southwest, for a total bonus payment of $11,140.12. None of the four shareholders of Mooney Southwest reported the bonus payments to him as taxable income on his income tax return for the taxable year 1966. Respondent in his notice of deficiency to each petitioner increased the reported income for 1966 by $2,785 with the explanation that the amount was "taxable income rather than a gift because it was for services rendered." OPINION
(a) Bond Warranty Expense Issue
Respondent takes the position that his disallowance of the deductions claimed by Mooney Southwest for bond warranty and premium coupon expense was necessary in order to clearly reflect the income of that corporation and therefore he should be sustained in his recomputation of its income under section *232 446(b). [5] 12 Petitioners contend that the liability of Mooney Southwest under the bonds and premium coupons is a fixed liability, the amount of which is properly accruable and deductible when the bonds are issued. It is therefore necessary to determine whether under the provisions of section 446(b), respondent had a reasonable basis for disallowing deductions claimed by Mooney Southwest for bond warranty expense and premium coupon expense in order to clearly reflect that corporation's income. The United States Court of Appeals for the Fifth Circuit considered the same issue presented by petitioners herein in Mooney Aircraft, Inc. v. United States, 420 F. 2d 400 *233 (C.A. 5, 1969) and sustained respondent's disallowance of a deduction by that corporation of accrued bond warranty expense for "Mooney Bonds" issued by that company. At the trial of this case, counsel for petitioners stated that petitioners contended that the Mooney Aircraft, Inc. case was distinguisable from the instant case on two grounds. The first claimed distinction was that the Court in the Mooney Aircraft, Inc. case did not consider the fact that under the escheat law of Texas [Texas Rev. Civ. St. Ann. Art. 3272 A (1968)] the issuer of the "Mooney Bond" would be obligated to pay the amount of the bond to the State of Texas 7 years after the aircraft with respect to which it was issued went out of service if prior to that time no claim for payment had been 13 made by the owner of the bond. The second claimed distinction was that Mooney Southwest had changed from the cash to an accrual method of accounting as a result of an investigation of its returns for 1962 and 1963 by an Internal Revenue agent. On brief petitioners make no contention that the Mooney Aircraft, Inc. case is distinguishable from the instant case on either of these grounds. Apparently petitioners *234 have abandoned these contentions. In any event the case of Mooney Aircraft, Inc. v. United States, supra, is not distinguishable from the instant case on either of these grounds. In Mooney Aircraft, Inc. v. United States, supra, at 406, the Court stated: There is no contingency in this case as to the fact of liability itself; the only contingency relates to when the liability will arise. [Footnote omitted.] To be sure, technically, the liability is "created" by the event of the retirement of a particular plane; if a plane lasted forever there would be no liability. * * * But here there is no doubt at all that the liability will occur since airplanes, like human beings, regrettably must cease to function. [Footnote omitted.] It is clear from this statement that the Fifth Circuit in Mooney Aircraft, Inc., supra, considered that the "Mooney Bonds" would at some point in time become payable. The Court further stated at 409-410: The most salient feature in this case is the fact that many or possibly most of the expenses which taxpayer wishes to presently deduct will not actually be paid for 15, 20 or even 30 years (the taxpayer has *235 not attempted to deny this). * * * In this case, however, the related expenditure is so distant from the time the 14 money is received as to completely attenuate any relationship between the two. * * * We therefore find no difficulty in concluding that the Commissioner had a reasonable basis for disallowing the deduction as not clearly reflecting income. This statement likewise shows that the Court considered that at some time payment would be due on the "Mooney Bonds." After the investigation of its returns for 1962 and 1963, Mooney Southwest accepted the proposed adjustment by the Internal Revenue agent placing it on an accrual basis of accounting and during the years here in issue this was its accounting method just as it was the method of Mooney Aircraft, the taxpayer involved in the Fifth Circuit case. Petitioners' primary argument on brief is that the decision of the Fifth Circuit is legally incorrect. Petitioners state on brief that the Mooney Aircraft, Inc. case is "partially" distinguishable from the instant case because Mooney Aircraft was a bankrupt corporation while Mooney Southwest is not. This purported distinction is not borne out by the facts in the *236 Mooney Aircraft, Inc. case. At no point does the Court state that Mooney Aircraft was bankrupt. The Court, in discussing the basis for its conclusion that the length of time before payment of the bonds would become due created doubt as to whether payment would ever actually be made, stated at 410: if one day it became insolvent the expense might never be paid, yet the money would have been used as tax-free income. We repeat that because of the inordinate 15 length of time involved in this case the Commissioner was clearly within his discretion in disallowing deduction of the "Mooney Bonds" as a current expense. This statement shows affirmatively that Mooney Aircraft was not bankrupt at the time of the decision by the Fifth Circuit. In our view there is no distinction between the instant case and the Fifth Circuit case in Mooney Aircraft, Inc. v. United States, supra. Therefore, under our holding in Jack E. Golsen, 54 T.C. 742 (1970), affd. 445 F. 2d 985 (C.A. 10, 1971), certiorari denied 404 U.S. 940 (1971), we must follow the decision of the Fifth Circuit as to all petitioners, with the possible exception of Norman *237 F. and Alyene E. Hoffman and Josephine B. Hodge, since it is clear that an appeal by any of the other petitioners would lie to the Fifth Circuit. Both parties at the trial and on brief assume that an appeal in this case would lie only to the Fifth Circuit. However, the parties stipulated that "Petitioners Norman F. Hoffman and Alyene E. Hoffman, husband and wife, resided at * * * Alexandria, Virginia * * * at the time they filed their petition in Docket No. 512-71." If this stipulation was intended to mean that the Hoffman's legal residence was in Virginia at the time their petition was filed, it would appear that an appeal in their case would lie to the Court of Appeals for the Fourth Circuit. 16 The stipulated facts also show that petitioner Josephine B. Hodge resided in Cannon City, Colorado at the time her joint petition with Raymond W. Hodge was filed. The record indicates that during the years 1965 and 1966 Josephine B. Hodge and Raymond W. Hodge were husband and wife residing in Texas, a community property State. Under these circumstances it would appear that an appeal in the case to which both Raymond W. Hodge and Josephine B. Hodge are parties might lie either *238 to the Fifth or the Tenth Circuit. We have found no direct authority on this point. However, see Lamb v. Commissioner, 374 F. 2d 256 (C.A. 2, 1967). In any event, we agree with the conclusion reached by the Fifth Circuit in the Mooney Aircraft, Inc. case. In that case the Appeals Court quoted and approved the interpretation we gave to the cases of American Automobile Assn. v. United States, 367 U.S. 687 (1961), and Schlude v. Commissioner, 372 U.S. 128 (1963), in Simplified Tax Records, Inc., 41 T.C. 75, 81 (1963). After agreeing with our conclusion that those Supreme Court cases "stand for the principle that, absent statutory sanction for it, unless the taxpayer can show that the Commissioner clearly abused his discretion in disallowing deferral of prepaid income or accrual of estimated future expenses, this exercise of the Commissioner's discretion will not be disturbed by the Court," the Appeals Court stated the question in the Mooney Aircraft, Inc. case to be "Was there reasonable basis for the 17 Commissioner's action" in disallowing the taxpayer's claimed deduction for accrued expenses in the face amounts of the *239 "Mooney Bonds" it had issued in each year. The Court concluded that because of the 15, 20, or even 30 years before the bonds would be paid with the attendant possibility that the taxpayer would become insolvent prior to the date payment was due and never pay the bonds, the action of the Commissioner in disallowing the deduction was clearly reasonable. The facts here show that in a period of 12 years Mooney Southwest has never paid one of its "Mooney Bonds" or premium coupons except with respect to aircraft destroyed in an air crash or ground accident. Obviously, whether such an accident will occur is uncertain. This case involves the same aircraft involved in the Mooney Aircraft, Inc. case. Here, as in that case, the petitioners do not deny that "many or possibly most" of the "Mooney Bonds" and premium coupons will not actually be paid for "15, 20 or even 30 years" and the president of Mooney Southwest testified that in some cases it could be as much as 50 years before an aircraft with respect to which a bond or coupon was issued was retired. In view of this extended period of time before payment of the bonds or coupons and the possibility that during the intervening years Mooney *240 Southwest could become insolvent and never pay the bonds, we conclude that respondent in this case did not abuse his discretion in 18 disallowing the deduction claimed by Mooney Southwest for bond or coupon expense consisting of the face amount of the "Mooney Bonds" or "Mooney Premium Coupons" issued. We sustain respondent's disallowance of this deduction claimed by Mooney Southwest. We conclude that the accruals set up and deductions claimed by Mooney Southwest for bond warranty and premium coupon expenses do not clearly reflect income.Therefore, respondent properly exercised his discretion in disallowing the deductions claimed and recomputing the income of Mooney Southwest. (b) Bonus Payments Issue
The second issue is whether the direct payment made by Mooney Aircraft to petitioners in the amount of $2,785.03 each, a total amount of $11,140.12, as a bonus payment constituted taxable income to petitioners, or a nontaxable gift to be excluded from gross income under section 102. This issue is factual and of course the burden of proof is on petitioners to introduce facts to establish the existence of a gift. Paul V. Hornung, 47 T.C. 428, 438-439 (1967). In *241 Commissioner v. Duberstein, 363 U.S. 278, 286 (1960), the Supreme Court concluded that whether a transfer was a "gift" turned primarily on the "intention" or dominant motive of the transferor in making the transfer. In DeJong v. Commissioner, 309 F. 2d 373, 379 (C.A. 9, 1962), affirming 36 T.C. 896 (1961), the Court analyzed the holding of the Supreme Court in Duberstein as follows: 19 The value of a gift may be excluded from gross income only if the gift proceeds from a "detached and disinterested generosity" or "out of affection, admiration, charity or like impulses" and must be included if the claimed gift proceeds primarily from "the constraining force of any moral or legal duty" or from "the incentive of anticipated benefit of an economic nature." * * * Petitioners herein have failed to demonstrate that the bonus payments made by Mooney Aircraft were motivated out of "detached or disinterested generosity" or "out of affection, admiration, or charity like impulses." Cf. Thomas L. Johnson, 48 T.C. 636 (1967). The record shows that the amounts of the bonus payments received by the various distributors of Mooney Aircraft *242 were directly related to the number of aircraft sold through the respective distributorships. The amount of bonus payment received by any distributor was computed on the basis of the number of aircraft purchased and the net billing to the distributor. Neither the fact that Mooney Aircraft paid the bonuses without being under any legal or moral obligation to make such payments nor the fact that the bonus payments were isolated to the one occasion here in issue is controlling as to the nature of the transfer. The fact that Mooney Aircraft did not seek a deduction for the bonus payment is only one fact to be considered in determining the "intention" in making the payment. Any weight to be given to this fact is weakened by petitioners' failure to show that taking a deduction for these payments would have in fact reduced the income tax paid by 20 Mooney Aircraft in 1966 in the light of its other deductions or carryovers from other years. While payment of the bonuses was isolated to one instance, the record reflects that a modified discount procedure was adopted in subsequent years which granted discounts on a progressive scale that escalated with the number of aircraft purchased. *243 The clear effect of the payments was as an "incentive of anticipated benefit of an economic nature." See Commission v. Duberstein, supra. We therefore conclude that the payment of $2,785.03 received by each petitioner constituted taxable income to him in 1966, the year the payment was received. Decisions will be entered for respondent. Footnotes
1. Cases of the following petitioners are consolidated herewith: Raymond W. Hodge and Josephine B. Hodge, docket No. 510-71; Calvin W. White and Caroline W. White, docket No. 511-71; Norman F. Hoffman and Alyene E. Hoffman, docket No. 512-71; and Hal F. Rachal and Virginia M. Rachal, docket No. 513-71. ↩
2. All references are to the Internal Revenue Code of 1954. ↩
3. All private aircraft in the United States are required to be registered currently with the Federal Aviation Administration, which publishes an annual report listing every aircraft in service in the country, which report is available to Mooney Southwest. Comparable registration requirements and reports are available in other countries in which the corporation sells aircraft. ↩
4. This aircraft was a multi-engine plane which had been manufactured by a company other than Mooney Aircraft. ↩
5. SEC. 446. GENERAL RULE FOR METHODS OF ACCOUNTING (a) General Rule. - Taxable income shall be computed under the method of accounting on the basis of which the taxpayer regularly computes his income in keeping his books. (b) Exceptions. - If no method of accounting has been regularly used by the taxpayer, or if the method used does not clearly reflect income, the computation of taxable income shall be made under such method as, in the opinion of the Secretary or his delegate, does clearly reflect income. ↩