ABE L. FOX and SHIRLEY J. FOX; ESTATE OF PHILLIP W. PILLSBURY, DECEASED, GEORGE S. PILLSBURY and CHARLES S. BELLOWS, CO-PERSONAL REPRESENTATIVES and CORINNE PILLSBURY; JOHN K. WHITNEY and HELEN W. WHITNEY; DONALD A. JACOBSON and SHARON L. JACOBSON; ESTATE OF STARKE R. HATHAWAY, DECEASED, F & M MARQUETTE NATIONAL BANK, REPRESENTATIVE and VIRGINIA HATHAWAY; NORTHSTAR COMPUTER FORMS, INCORPORATED; RAYMOND DYKEMA and JEANNE DYKEMA; and THOMAS H. WYMAN and ELIZABETH M. WYMAN, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Fox v. Commissioner
Docket No. 35537-85.
United States Tax Court
T.C. Memo 1987-209; 1987 Tax Ct. Memo LEXIS 207; 53 T.C.M. (CCH) 651; T.C.M. (RIA) 87209; April 27, 1987. David W. Johnson and James A. Beitz, for the petitioners. Bruce N. Crawford, for petitioners *208 Donald A. Jacobson and Sharon L. Jacobson and petitioners Thomas H. Wyman and Elizabeth M. Wyman. Jack Forsberg, for the respondent. COHEN
MEMORANDUM FINDINGS OF FACT AND OPINION COHEN, Judge: Respondent determined deficiencies in petitioners' Federal income tax as follows: Year
Deficiency
Abe L. and Shirley J. Fox
1977
$474.70
1978
2,261.00
Corinne Pillsbury and Estate
1977
4,737.00
of Phillip W. Pillsbury
1978
13,590.00
John K. and Helen W. Whitney
1978
6,666.99
Donald A. and Sharon L.
1978
3,048.00
Jacobson
Virginia Hathaway and Estate
1978
1,511.84
of Starke R. Hathaway
Northstar Computer Forms, Inc.
10-31-79
15,784.00
Raymond and Jeanne Dykema
1978
11,838.99
Thomas H. and Elizabeth M.
1977
1,876.70
Wyman
1978
6,463.27
After concessions, the sole issue for decision is whether Cedar Riverside Land Company, an accrual basis limited partnership, was entitled to deduct certain expenses in 1978. FINDINGS OF FACT Many of the facts have been stipulated, and the facts set forth in the stipulation are incorporated in our findings by this reference. When the petition was filed, Abe L. and *209 Shirley J. Fox resided in Bismarck, North Dakota, and Thomas H. and Elizabeth M. Wyman resided in New York, New York. Each of the other petitioners maintained a residence or principal place of business in Minnesota. Petitioners were limited partners in Cedar-Riverside Properties, a Minnesota limited partnership (CRP). [1]CRP was in turn a partner in Cedar-Riverside Land Company (CRLC), a Minnesota general partnership. CRP and CRLC each used the accrual method of accounting. The Urban Crowth and New Community Development Act of 1970, 42 U.S.C. (1982) 4501-4532 (New Community Act), authorized several types of financial assistance for new community development. Section 713(a) of the New Community Act authorized the Secretary of Housing and Urban Development (HUD) to: guarantee, and enter into commitments to guarantee, the bonds, debentures, notes, and other obligations issued by or on behalf of private new community developers *210 and State land development agencies for the purpose of financing real property acquisition and land development and to compensate for the use of real property or the removal of liens or encumbrances on such property, pursuant to the new community development programs approved by the Secretary. * * * [Pub.L. 91-609, 84 Stat. 1796.] The New Community Act also created within HUD a corporate body known, during the year in issue, as the New Community Development Corporation (NCDC). Guarantees and loans made pursuant to the Act were to be administered through the NCDC. On August 19, 1970, an entity related to CRP and CRLC applied for financial assistance under the New Community Act. The NCDC approved the application and on June 28, 1971, issued its commitment letter. CRLC's principal function was to acquire and hold real estate for subsequent redevelopment by related entities as part of a "new community" to be established under the auspices of the NCDC. CRLC began acquiring real estate in the Cedar-Riverside section of Minneapolis in 1971. CRLC financed its acquisition of the real estate through the sale of $24 million of debentures guaranteed by the NCDC in accordance with *211 a Project Agreement between CRLC and the NCDC. The debentures were issued on December 15, 1971, had a stated maturity date of December 15, 1991, and bore interest at a rate of 7.2 percent per annum payable semiannually on June 15 and December 15. By an Indenture of Mortgage and Deed of Trust, CRLC granted the First Trust Company of St. Paul (the trustee) a security interest in various assets, primarily the real estate then held or subsequently acquired by CRLC. The security interest was to protect the NCDC against any liability it might incur as guarantor of the debentures. In accordance with the terms of the original Indenture, CRLC and the trustee entered into a series of Supplemental Indentures whereby CRLC granted the trustee security interests in real estate acquired subsequent to the execution of the original Indenture. Article V of the Indenture (sections 5.01 through 5.28) set forth various covenants made by CRLC. CRLC was to pay the NCDC an annual fee of "one-half of 1 percent of the average principal amount of all Debentures Outstanding during the preceding year." CRLC was also to deposit with the trustee an amount sufficient to pay each installment of interest as *212 it fell due. Failure to make such a deposit constituted a "payment default." Section 6.02(b) of the Indenture provided that, in the event of a "payment default," the NCDC could deposit with the trustee funds for the payment of interest on the debentures. CRLC was to immediately reimburse the NCDC for any amounts paid by the NCDC pursuant to its guarantee of the debentures or pursuant to section 6.02(b). The Indenture also provided that CRLC was to pay the NCDC "on demand" interest at the rate borne by the debentures (1) on amounts paid by the NCDC pursuant to its guarantee or section 6.02(b) and (2) on annual fees not paid when due under section 5.04 of the Indenture. Section 2.03 of the Project Agreement also provided that CRLC was to immediately reimburse the NCDC for any amounts paid by the NCDC pursuant to its guarantee and required CRLC to pay interest on amounts not immediately reimbursed. In August 1971, the NCDC filed an Environmental Impact Statement (EIS) for the Cedar-Riverside project. In December 1973, a group known as the Cedar-Riverside Environmental Defense Fund sued the NCDC and CRLC alleging that the EIS filed in 1971 was inadequate. This litigation effectively *213 precluded development or sale of the real estate held by CRLC and caused significant financial difficulties for the partnership. During the years 1975 through 1978, CRLC did not deposit with the trustee amounts for payment of interest due on the debentures. The NCDC deposited funds for payment of the interest, but CRLC did not reimburse the NCDC for these deposits. CRLC also failed to pay the NCDC's annual fees. Some of the real estate that secured the Indenture was subject to prior Contracts for Deed and Purchase Money Mortgages. During the years 1976, 1977, and 1978, CRLC did not deposit with the trustee funds for the payment of the amounts due on some of these Contracts for Deed and Purchase Money Mortgages and did not pay certain real estate taxes and similar charges on real estate securing the Indenture. In 1978 the trustee paid such amounts with funds deposited with it by the NCDC (advances). CRLC did not reimburse the trustee or the NCDC for these advances. By late June of 1976, CRLC had failed to deposit funds for the payment of interest on the debentures on three consecutive occasions. On August 4, 1976, the board of directors of the NCDC directed the NCDC staff *214 to develop a plan for the acquisition of the Cedar-Riverside project from CRLC. On October 7, 1976, the board authorized foreclosure of the project and the utilization of any of the other remedies provided for by the Indenture if necessary for the protection of the NCDC's interest. On December 10, 1976, the board directed the staff to negotiate with the interested parties for the acquisition of the project by means of a deed in lieu of foreclosure no later than June 15, 1977. The board again authorized foreclosure if necessary for the protection of the NCDC's interest. Foreclosure was not initiated at that time, however, as the staff continued to negotiate with CRLC and other interested parties throughout the first half of 1977. The NCDC and CRLC were unable to agree on a plan for the NCDC acquisition of the project. Accordingly, on October 19, 1977, the NCDC's board directed the NCDC staff to take steps necessary to (1) accelerate and pay off the debentures, and (2) foreclose on the Cedar-Riverside project. The Indenture provided that the NCDC had the right to accelerate payment of the debentures upon CRLC's failure to pay its annual fee or to deposit with the trustee amounts *215 for payment of interest on the debentures. On October 20, 1977, the NCDC exercised its right to accelerate the payment of the debentures and caused the debentures to become due and payable on November 29, 1977. On November 25, 1977, CRP, CRLC, and various related entities (Cedar-Riverside) initiated an action in Federal District Court against the NCDC and various other parties (the Cedar-Riverside action) to enjoin the NCDC from accelerating the debentures and from foreclosing under the Indenture and to seek damages for NCDC's failure to file an adequate EIS. CRLC's request for an injunction was based on the theory that the NCDC was precluded from exercising its rights under the Indenture due to the NCDC's alleged failure to perform various contractual and statutory duties. On November 29, 1977, the NCDC, in honor of its guarantee of the debentures, deposited with the trustee for payment to the debenture holders $24,787,200 representing the $24 million principal amount of the debentures and $787,200 of interest accrued thereon to November 29, 1977. The covenants made by CRLC in Article V were made for "So long as any of the Debentures remain Outstanding." The term "outstanding" *216 when used in the Indenture with respect to the term "debenture," meant all issued debentures except: (1) Debentures theretofore cancelled by the Trustee or delivered to the Trustee for cancellation; (2) Debentures for whose payment or redemption money in the necessary amount has been theretofore deposited with the Trustee * * *; and (3) Debentures in exchange for or in lieu of which other Debentures have been authenticated and delivered pursuant to this Indenture. [Emphasis added.] Under the terms of the Indenture, no debentures were "outstanding" after November 29, 1977. By late 1977, the NCDC had expended approximately $30 million to honor its guarantee of the debentures and to protect its interest in the real estate securing the Indenture. Throughout 1978 the NCDC continued to pay substantial amounts on senior debts and real estate taxes in order to protect its security. On February 8, 1978, the NCDC sued the Cedar-Riverside entities and the First National Bank of St. Paul to foreclose under the Indenture (foreclosure action). It based its right to foreclose on an alleged failure by Cedar-Riverside to pay interest and other expenses allegedly due prior to *217 December 31, 1977, and on an alleged failure to pay the accelerated principal debenture obligation. In January 1978, the General Manager of the NCDC decided to recommend to the Secretary of HUD that all interest and fees accruing under the Indenture after December 31, 1977, be waived. The General Manager's decision was based on a report prepared by Coopers and Lybrand, a public accounting firm, in 1976. Coopers and Lybrand advised the NCDC that due to the adverse tax consequences to CRP's limited partners of a foreclosure on the project, CRLC would likely attempt to contest and prolong any foreclosure proceedings. In particular, Coopers and Lybrand advised the NCDC that CRLC's ability to accrue interest and fees due under the Indenture, thereby generating ordinary deductions for CRP's limited partners, served as an incentive to CRLC to delay foreclosure of the project. In order to lessen CRLC's incentive to delay foreclosure, Coopers and Lybrand recommended that the NCDC prospectively waive interest and fees due under the Indenture. On February 4, 1978, the Secretary of HUD personally executed the Waiver. The Waiver states, in part: Under my authority and under the provisions *218 of Section 5.28 of the Indenture of Mortgage and Deed of Trust dated December 9, 1971 between Cedar-Riverside Land Company, I hereby waive interest from and after January 1, 1978 on the $24,000,000 of accelerated principal payment made by the United States on November 29, 1977, as well as on all fees, interest, and advances owing to the Secretary by Cedar-Riverside Land Company, from and after January 1, 1978. On February 4, 1978, the General Manager sent CRLC a letter notifying CRLC that the Secretary was waiving interest accruing after December 31, 1977. The General Manager's letter stated, in part: [T]he Secretary waives interest from and after January 1, 1978 on the $24,000,000 principal amount of the Debentures paid by the Secretary pursuant to the Indenture, and on all fees, debenture interest payments and advances owing to the Secretary by the Company as of January 1, 1978. In so doing, we are not waiving any Default which has occurred prior to January 1, 1978 under the Project Agreement between the Company and the United States dated December 9, 1971, or under the Indenture, or our rights to pursue any element of security. Nor are we forgiving any amount representing *219 any obligations of the Company to the United States for any period prior to January 1, 1978, or waiving the right to reinstitute prospectively on written notice to the Company the accrual of interest on all or any of the amounts owing to the Secretary by the Company. This notice is sent to you pursuant to the provisions of Section 5.28 of the Indenture. On April 24, 1978, prior to the filing of CRLC's answer, the NCDC filed an Amended Complaint in the foreclosure action. In paragraph 5 of its Amended Complaint, the NCDC alleged that: (a) CRLC has failed to pay the United States $24,000,000 which represents the amount of accelerated debenture principal the United States paid the Trustee on behalf of CRLC on November 29, 1977 for distribution to Debentureholders. (b) CRLC has failed to deposit in a timely manner the amount of debenture interest payments with the Trustee as required by Section 5.02 of the Original Indenture. The United States has deposited debenture interest payments of $864,000 with the Trustee, and the Trustee has paid out to the Debentureholders such payments on or about June 15, 1975, December 15, 1975, June 15, 1976, December 15, 1976 and June 15, 1977. *220 The United States also deposited debenture interest payments of $787,200 with the Trustee on November 29, 1977, to distribute to Debentureholders. Between November 29, 1977 and December 31, 1977, an additional $153,600 in interest accrued. The total payments and accrued interest were $5,260,800. (c) CRLC has failed to pay the United States the Annual Fees of $120,000 due in December 1975 and December 1976 for a total of $240,000 plus $25,920 interest thereon, and has failed to cure these defaults within 10 days as required by Section 6.01(d)(2) of the Original Indenture. CRLC filed its Answer to the Amended Complaint on May 24, 1978. CRLC's Answer incorporated by reference the allegations raised in its complaint in the Cedar-Riverside action respecting the NCDC's alleged failure to perform various duties and obligations, and it alleged as an affirmative defense that the NCDC failed to perform such duties and obligations. In paragraph 5 of its Answer to the Amended Complaint, CRLC admitted that the amounts alleged in paragraph 5 of the Amended Complaint had not been deposited or paid, but alleged that it "was relieved of its obligation to make such payments by virtue of the *221 failure of Plaintiff [the NCDC] to perform in accordance with its agreements as hereinbefore alleged" (emphasis added). CRLC's Answer also raised additional affirmative defenses of estoppel, failure of consideration, misrepresentation, waiver, duress, and failure to file an adequate EIS. Consistent with HUD's purported "waiver" of interest and fees accruing under the Indenture in 1978, the NCDC did not seek payment for amounts accruing after December 31, 1977. In paragraph 6 of its Amended Complaint, the NCDC alleged that, under the terms of the Indenture, there was due and owing from CRLC as of the commencement of the foreclosure action: (i) the principal outstanding on the Debentures of $24,000,000; (ii) approximately $900,000 in advances for the payment of real estate taxes, purchase money mortgages, contracts for deed, leases and project operations, plus any further costs which may accrue for which the United States advances funds; (iii) $5,260,800 of debenture interest payments made by the United States or accrued thereon and interest on such amounts prior to January 1, 1978 and (iv) $240,000, which is the aggregate amount of unpaid annual fees, plus $25,920 interest *222 on such amount accrued prior to January 1, 1978. CRLC's Answer denied the allegations of paragraph 6 of the Amended Complaint. The Cedar-Riverside action and the foreclosure action were consolidated on July 20, 1978. The NCDC's pleadings in the consolidated actions did not allege that there was due and owing from CRLC any interest or fees accruing under the terms of the Indenture after December 31, 1977. CRLC's pleadings in the consolidated actions did not challenge the validity of the Secretary's purported waiver of interest and fees occurring under the Indenture after December 31, 1977. In 1980, the parties to the foreclosure action filed trial memoranda elaborating on the allegations contained in their pleadings. The NCDC's trial brief in the foreclosure action included a section entitled "Statement of Material Facts" which enumerated the facts that the NCDC proposed to prove at trial. CRLC's trial brief in the foreclosure action contained a section which responded specifically to each paragraph of the "Statement of Material Facts" section of the NCDC's trial brief. Paragraph 10 of the "Statement of Material Facts" section of the NCDC's trial brief stated: CRLC *223 failed to meet several debenture and fee obligations under the Indenture which became "Extended Indenture Defaults" when CRLC failed to cure them. They include: a. Failure to pay the United States $24,000,000 which represents the amount of accelerated debenture principal the United States paid the Trustee on behalf of CRLC on November 29, 1977 for distribution to debentureholders. b. CRLC failed to deposit with the Trustee the amount of debenture interest payments as required by Section 5.02 of the Indenture on November 15, 1975, December 15, 1975, June 15, 1976, December 15, 1976 and June 15, 1977. The United States deposited the interest payments, each in the amount of $864,000, with the Trustee on those occasions. In addition, the United States made deposits of interest payments of $787,200 on November 29, 1977 and $153,600 for interest accruing on June 15, 1977, which were the obligation of CRLC. The United States made total interest payments of $5,260,800. c. CRLC failed to pay the United States annual fees of $120,000 due in November, 1975 and December, 1976 for a total of $240,000, plus interest. In response to paragraph 10 of the "Statement of Material Facts" *224 section of the NCDC's trial brief, CRLC's trial brief stated: 10. (a) Defendants CRLC, et al., admit that Defendant CRLC has not paid the United States Twenty-four Million Dollars ($24,000,000) as alleged * * * and further allege that Defendant CRLC was relieved of its obligation to make such payment by virtue of the failure of Plaintiff United States to perform in accordance with its statutory and contractual obligations * * * (b) Defendants CRLC, et al., admit that Defendant CRLC has not deposited debenture interest payments as alleged * * * and further allege that Defendant CRLC has been relieved of its obligation to make such payments by virtue of the failure of Plaintiff United States to implement the provisions of the Urban Growth and New Community Development Act of 1970 * * * and to otherwise perform in accordance with its statutory and contractual obligations * * * (c) Defendants CRLC, et al., admit that Defendant CRLC has not paid annual fees as alleged * * * and further allege that Defendant CRLC has been relieved of its obligation to make such payments by virtue of the failure of Plaintiff United States to perform in accordance with its statutory and *225 contractual obligations * * * [Emphasis added.] On its 1978 partnership return, CRLC accrued and deducted the following expenses: (a) Interest on debentures (7.2% of $24,000,000 principal)
$1,728,000
(b) Interest on unpaid interest and unpaid annual fees
(7.2% on all unpaid interest and HUD fees for 1975,
1976, 1977, and 1978)
435,866
(c) Annual fee
120,000
CRLC did not accrue or deduct for 1978 interest on advances by the NCDC for real estate taxes and other expenses. During the Internal Revenue Service examination of the CRLC return for 1978, CRLC discovered that it had not claimed that deduction. The parties agree that if CRLC were entitled to deduct interest with respect to the Indenture for the year 1978, the correct amounts would be (i) $1,728,000 with respect to the principal amount; (ii) $433,444 with respect to interest on unpaid interest and HUD annual fees; and (iii) $111,119 with respect to interest on advances. Each petitioner deducted his, her, or its distributive share of CRLC's partnership loss. In notices of deficiency, respondent disallowed portions of these deductions attributable, in part, to the interest and fees here in issue. *226 OPINION Taxpayers may deduct ordinary and necessary business expenses incurred during the taxable year. Section 162. [2] The Internal Revenue Code also allows a deduction for all interest accrued during the taxable year. Section 163. Accrual basis taxpayers and other reporting entities, such as CRLC, must claim expenses in the taxable year in which (1) "all the events have occurred which determine the fact of the liability" and (2) "the amount thereof can be determined with reasonable accuracy." Section 1.461-1(a)(2), Income Tax Regs. Petitioners contend that they are entitled to deduct, as limited partners in CRP, their distributive shares of partnership losses attributable, in part, to certain expenses reported by CRLC in 1978. Respondent maintains that CRLC's accruals failed to satisfy the first requirement of the familiar "all events" test. Establishment of the "fact of liability" turns not upon the existence or absence of legal liability, but upon the existence or absence of a "fixed and definite obligation" to pay. *227 Champion Spark Plug Co. v. Commissioner,30 T.C. 295, 298 (1958), affd. per curiam 266 F.2d 347 (6th Cir. 1959); see Burlington Northern Railroad v. Commissioner,82 T.C. 143, 151 (1984). Respondent contends that CRLC did not, in 1978, have a fixed and definite obligation to pay interest or fees accruing under the terms of the Indenture. We agree. The Supreme Court has long held that, for tax purposes, "a liability does not accrue as long as it remains contingent." United States v. Hughes Properties, Inc., 476 U.S.     (1986), quoting Brown v. Helvering,291 U.S. 193, 200 (1934); accord, Dixie Pine Products Co. v. Commissioner,320 U.S. 516, 519 (1944). In light of the circumstances surrounding the Secretary's purported "waiver" of interest and fees accruing under the Indenture in 1978, CRLC's obligations were not "fixed and definite," but contingent. By 1978, CRLC had long experienced financial difficulties. In 1973, environmental litigation brought development of the Cedar-Riverside project to a halt. By 1975, the partnership was unable to provide the trustee with funds for the payment *228 of interest on its debentures. By 1976, CRLC was also unable to provide the trustee with funds for the payment of amounts due under certain obligations secured by real estate that also served as security for the Indenture. The NCDC provided the trustee with over $30 million to pay these expenses and to redeem the debentures. CRLC failed to reimburse the NCDC. During the years 1975 through 1978, the partnership also failed to pay the NCDC annual fees due under the terms of the Indenture. The NCDC decided to foreclose on the Indenture, but CRLC resisted. On November 25, 1977, CRLC and its related entities filed suit in Federal District Court seeking to enjoin the NCDC from foreclosing on the Indenture. On February 8, 1978, the NCDC filed an action to foreclose. The NCDC soon amended its Complaint, CRLC and the trustee responded with an Answer and Counterclaim, and on July 20, 1978, the two lawsuits were consolidated. During the course of the litigation, the NCDC continued to pay substantial amounts on senior debts and real estate taxes in order to protect its interest in the real estate securing the Indenture. Petitioners characterize the "waiver" of interest as a "crude litigation *229 tactic." The NCDC certainly attempted to weaken CRLC's resistance to foreclosure. The Secretary's purported "waiver" was apparently designed to hasten foreclosure by depriving CRLC's investors of deductions for their share of expenses that would have otherwise accrued. In the context of its action to foreclose on the Indenture, however, the NCDC had every incentive to forego payment for interest and fees accruing after 1977. Whether or not CRLC's obligations under the Indenture remained legally enforceable, in reality they had become contingent. We need not determine the legal validity of the Secretary's "waiver," because the uncertainty as to its validity renders the obligation contingent and the accrual unsustainable. Petitioners' reliance on Zimmerman Steel Co. v. Commissioner,130 F.2d 1011 (8th Cir. 1942), and Fahs v. Martin,224 F.2d 387 (5th Cir. 1955), is misplaced. In Zimmerman Steel Co. and Fahs, the Courts of Appeal for the Eighth and Fifth Circuits held that improbability of payment does not justify disallowing accrual of an expense. Zimmerman Steel Co. and Fahs are clearly distinguishable from the case before us. *230 As Judge Wisdom observed in Guardian Investment Corp. v. Phinney,253 F.2d 326, 334 n.12 (5th Cir. 1958), "[t]hese cases carry accrual to the outer limits when there is improbability of payment, but in * * * [neither case] is there any uncertainty of liability." See Mooney Aircraft v. United States,420 F.2d 400, 410 (5th Cir. 1969); Burlington-Rock Island Railroad Co. v. United States,321 F.2d 817, 820 (5th Cir. 1963). In Zimmerman Steel Co., the Court recognized that: In Helvering v. Jane Holding Company, 8 Cir., 109 F.2d 933, 942, we dealt with a situation where an accrued item of interest was shown on a taxpayer's books as owing to a creditor, but the debt was forgiven by the creditor and therefore was not really a debt of the taxpayer. Under such circumstances there would be no "items of interest accrued" and no allowable deduction on account of one. But in this case the Board [of Tax Appeals] did not find that the interest debt shown on the taxpayer's books had been forgiven by the creditor. Its statement in the opinion is that the facts which are recited "strongly indicate a forgiveness of the *231 interest" but this expression falls short of a finding that there was such forgiveness. [130 F.2d at 1012.] In this case, in contrast to Zimmerman Steel Co., it is the existence of CRLC's obligations that are in question, not the probability that CRLC would pay obligations admittedly due and owing. Because we have concluded that CRLC's obligations to pay were in fact contingent, petitioners are not entitled to deductions for liabilities "accruing" in 1978. The foregoing holding is dispositive of this case. We observe, however, that an accrual basis entity, such as CRLC, may not generally deduct an expense in a year in which it is contesting its liability for that expense. Dixie Pine Products Co. v. Commissioner,supra;Security Flour Mills Co. v. Commissioner,321 U.S. 281 (1944). The regulations provide that "[a] contest arises when there is a bona fide dispute as to the proper evaluation of the law or the facts necessary to determine the existence or correctness of the amount of an asserted liability." Section 1.461-2(b)(2), Income Tax Regs. Careful examination of the pleadings and other memoranda filed in the *232 course of the foreclosure litigation persuades us that CRLC contested its liability for interest and fees accruing in 1978. Petitioners contend, however, that CRLC challenged only the NCDC's right to accelerate payment of the debentures and to foreclose on the Indenture. Although "the accrual method itself makes irrelevant the timing factor that controls when a taxpayer uses the cash receipts and disbursements method," United States v. Hughes Properties, Inc., 476 U.S.     (June 3, 1986), we are persuaded that CRLC challenged not the timing but the existence of its obligations. Documents filed in the foreclosure litigation by CRLC simply do not support petitioners' contention. The partnership never directly challenged the NCDC's right to accelerate payment of the debentures and foreclose on the Indenture. CRLC instead admitted that it had not paid the amounts alleged to be in default but claimed that it has "been relieved of its obligation to make such payments" by the NCDC's failure "to perform in accordance with its statutory and contractual obligations." CRLC thus contended that it might never have to make payments pursuant to the Indenture, e.g., that its obligations *233 were contingent.
Petitioners also note that the foreclosure litigation concerned only CRLC's obligation to pay amounts allegedly due in 1977, and they argue that CRLC's position in the litigation is thus irrelevant to the issue for decision in this case. We disagree. Consistent with its "waiver," the NCDC did not demand payment of amounts accruing under the Indenture in 1978. CRLC's position in the foreclosure litigation was based, however, almost entirely upon affirmative defenses equally applicable to its obligation to pay amounts due in that year. The regulations state that "[i]t is not necessary that the affirmative act denying the validity or accuracy, or both, of an asserted liability be in writing if, upon examination of all the facts and circumstances, it can be established to the satisfaction of the Commissioner that a liability has been asserted and contested." Section 1.461-2(b)(2), Income Tax Regs. By maintaining its suit in 1978, while failing to pay amounts accruing in that year, CRLC acted as if its obligations under the Indenture were contingent upon performance by the NCDC. Respondent's determination that CRLC was contesting its obligations was therefore *234 not unreasonable. The testimony of one of the partnership's principal attorneys in the foreclosure litigation supports this construction of the allegations contained in CRLC's pleadings. Q. [W]hat was the basis for alleging that those amounts, that is the interest payments, were not due and owing in 1978? A. The basis for that allegation would have been the same basis for our affirmative allegations in our complaint. In other words, the Government's failure to abide by its obligations. Q. In other words, at least with respect to these amounts, Cedar-Riverside's liability was not merely alleging that the Government could not accelerate payments which were due. Is that correct? A. The allegation here is that we were relieved of our obligation to make the interest payments because of the Government's -- relieved of our obligation to make the interest payments at that time because the Government was then essentially in default.
Q. So it was the position of Cedar-Riverside -- A. I don't think it's saying that those obligations have been wiped out. It's just they don't have to be paid now because the Government is now in default. Q. Was it the position then *235 of the Cedar-Riverside Land Company that no amounts at this time were accruing on the underlying $24 million liability? A. Were accruing? Q. Right. A. No, but that we were relieved of our obligation to make the payments until the Government performed under those agreements and the relevant statutes. [Emphasis added.] "Proper financial accounting and acceptable tax accounting, to be sure, are not the same." United States v. Hughes Properties, Inc.,supra. Because CRLC contested its obligation to pay amounts due in 1978, we hold that petitioners are not entitled to deductions for liabilities "accruing" in that year. We have considered the other arguments advanced by the parties and conclude that their resolution is not necessary for our disposition of the issue presented to us. Other issues have been severed and remain to be resolved with respect to petitioners Estate of Phillip W. Pillsbury, Deceased, and Corinne Pillsbury and Thomas H. Wyman and Elizabeth N. Wyman. To reflect the foregoing, An appropriate order will be issued.
Footnotes
1. Petitioner Raymond Dykema was a partner in RD-JV Investments, a general partnership. Fifty percent of the profits and losses of RD-JV Investments was allocable to Raymond Dykema. RD-JV Investments was a limited partner in CRP.↩
2. Unless otherwise indicated, all statutory references are to the Internal Revenue Code of 1954, as amended and in effect during the year in issue.↩